■ ALLISON STROH, Plaintiff, v GENERAL MOTORS CORPORATION, Respondent, and STELLA MAYCHICK, Appellant, et al., Defendant. [623 NYS2d 873] —Order, Supreme Court, New York County (William J. Davis, J.), entered June 14, 1994, which granted the motion of defendant General Motors Corporation ("GMC"), pursuant to CPLR 3124, to compel defendant Stella Maychick at her deposition to answer co-defendant GMC's questions, over objection by her counsel, on the ground of attorney-client privilege, unanimously reversed, on the law, and the motion denied, without costs.

This action arises out of a highly publicized accident which occurred at Washington Square Park in Manhattan on April 23, 1992. When Mrs. Maychick lost control of the Oldsmobile she was driving, the car jumped the sidewalk curb, hurtled into the park, and injured at least a dozen people. Twelve separate actions, now consolidated, were commenced, seeking damages against Mrs. Maychick as owner and operator of the vehicle, and against GMC as its manufacturer.

At two depositions conducted of the 76-year old Mrs. May-

chick by GMC, the latter's attorneys sought to elicit details of all of her discussions with her own lawyers. GMC contended, and the motion court agreed, that because Mrs. Maychick's daughter, Diana, was present during those conversations, the statutory attorney-client privilege which would normally protect those communications from compulsory disclosure (CPLR 4503 [a]) did not attach. GMC argues that the daughter's presence negated the vital element of confidentiality necessary to invoke the privilege *(see, People v Harris,* 57 NY2d 335, *cert denied* 460 US 1047). We disagree.

Generally, the circumstances of each case will determine whether a communication by a client to an attorney should be afforded the cloak of privilege *(Matter of Jacqueline F.,* 47 NY2d 215, 222). In our assessment of this record, the existing circumstances weigh heavily in favor of preservation of the privilege. We are here presented with an aged woman required to recall, and perhaps relive, what was probably the most traumatic experience of her life. Her daughter selected the law firm to represent her, transported her to the law office, and put her sufficiently at ease to communicate effectively with counsel. "[C]ommunications made to counsel through * * * one serving as an agent of * * * [the] client to facilitate communication, generally will be privileged" *(People v Osorio,* 75 NY2d 80, 84).

Furthermore, it appears that Diana had been a passenger who had alighted from the vehicle just before it proceeded to the accident site. Diana's role as a possible witness to aid the memory of her mother cannot be overlooked. The scope of the privilege is not to be defined by a third party's employment or function; it rather depends upon whether the client had "a reasonable expectation of confidentiality under the circumstances" *(supra,* at 84; *see also, United States v Bigos,* 459 F2d 639, 643, *cert denied sub nom. Raimondi v United States,* 409 US 847). We think it unreasonable to discern any other expectation by either Mrs. Maychick or her attorneys, because Diana was clearly acting as her mother's agent in this setting.

In light of the foregoing, it is unnecessary to consider the further contentions raised by Mrs. Maychick that Diana was herself a client (albeit one with a potential conflict of interest dissolving the privilege), or that the inquiry sought would trespass upon the protected area of attorney's work product (CPLR 3101 [c]; *Corcoran v Peat, Marwick, Mitchell & Co.,* 151 AD2d 443). Concur—Ellerin, J. P., Wallach, Ross and Williams, JJ.