*424 Gama’s privilege log properly asserted the attorney-client privilege as to all of the documents at issue. We reject defendants’ assertion that the privilege was waived because the communications were copied to, sent to, or authored by third-party Alireza Ittihadieh. Although attorney-client communications shared with a third-party generally are not privileged, “an exception exists for ‘one serving as an agent of either attorney or client’ ” (Robert V. Straus Prods. v Pollard, 289 AD2d 130, 131 [1st Dept 2001], quoting People v Osorio, 75 NY2d 80, 84 [1989]). Here, the affidavit of Gama’s principle shows that Ittihadieh was acting as Gama’s agent and that Gama had a reasonable expectation that he would keep the communication confidential (see Osorio, 75 NY2d at 84; see also Stroh v General Motors Corp., 213 AD2d 267, 268 [1st Dept 1995]).
Gama’s privilege log asserted the trial preparation privilege (see CPLR 3101 [d] [2]) as to all documents at issue except entry 313. We find that Gama’s affidavit in opposition to defendants’ motion adequately explained that these documents were prepared in anticipation of litigation, and that defendants failed to show the “substantial need” and “undue hardship” required to overcome the privilege (see CPLR 3101 [d] [2]). We also find that Gama did not waive the trial preparation privilege by copying these documents to its agent, Ittihadieh, who was highly unlikely to disclose confidential material to Gama’s adversary (see People v Kozlowski, 11 NY3d 223, 246 [2008], cert denied 556 US 1282 [2009]).
Gama also contends that entries 316, 319, 325-26, 332-33, 356-57, 361, and 368 constitute attorney work product, which, unlike trial preparation, is subject to an absolute privilege (see e.g. Corcoran v Peat, Marwick, Mitchell & Co., 151 AD2d 443, 445 [1st Dept 1989]; compare CPLR 3101 [c] with CPLR 3101 [d] [2]). However, Gama waived this argument (see generally CPLR 3122 [b]). Upon review of Gama’s original and revised privilege logs, we conclude that Gama deliberately chose to use the label “Trial Preparation Privilege” instead of “Work Product Doctrine” in its revised log.
We turn now to Gama’s motion to compel. Gama’s complaint seeks reformation of a note between itself and nonparty KEF that was subsequently acquired by defendant KB, together with 14 other loans, via the PSA. The signed note reflects a term of *425 24 months. However, Gama claims that the term was 60 months, and it submitted affidavits by the individuals who negotiated the note for it and KEF respectively stating that the parties had agreed on a 60-month term with the option of resetting the interest rate after 24 months, and that the signed document did not reflect their agreement. The complaint alleges further that Gama and KEF engaged in negotiations from April through September 2010 to resolve this issue, but that defendants — who had begun negotiating in August 2010 to acquire a portfolio of loans from KEF — dissuaded KEF from reforming the Gama loan.
One of the affidavits submitted by Gama’s principal states that the superior of the KEF employee with whom Gama negotiated told Gama’s principal that the vast majority of Key Bank National Association’s notes (apparently, KEF is an affiliate of Key Bank) had terms of five years or more and that shorter term notes were unusual. If the other loans that KEF sold to KB in the PSA had five-year terms, that would tend to support Gama’s position.
In addition, KEF sold Gama’s loan at a discount. If the discount for Gama’s loan was greater than the discount for the other loans, other factors (such as the creditworthiness of the borrower) being equal, that might indicate that — despite KEF’s statement in the PSA that it “believes the relevant Credit Documents accurately reflect the agreement between [KEF] and Gama” — it knew there was a problem.
Thus, we direct defendants to produce a version of the PSA that includes the names of the other borrowers, the length of their loans, the outstanding amounts of their loans, and the amounts for which KEF sold these loans to KB. Since the parties have signed a protective order, the information about the other borrowers can be kept confidential. Furthermore, it will not be unduly burdensome for defendants to produce this information. Similarly, it will not be unduly burdensome for defendants to produce an unredacted version of DEF1205-06.
We do not find that unredacted drafts of the PSA or the unredacted negotiating history of the PSA would be relevant to Gama’s reformation, and tortious interference claims against defendants, or its unclean hands defense to KB’s counterclaim for an injunction. Concur — Friedman, J.P, Acosta, Renwick, Richter and Abdus-Salaam, JJ.